**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **KATHLEEN TOTTY, f.k.a. KATHLEEN P. LUTZ,** )  | |
| **Plaintiff,** )  | **Civil Action** |
| )  | **Case No.:** 19-cv-3781 |
| **v.** )  | |
| )  | **JURY DEMANDED** |
| **ANDERSON FUNERAL HOME, LTD.,** )  | |
| **Defendant.** )  | |

## COMPLAINT

The Plaintiff, KATHLEEN TOTTY, formerly known as KATHLEEN P. LUTZ, an individual, by her attorneys, Lillig & Thorsness, Ltd., Complains of the Defendant, ANDERSON FUNERAL HOME, LTD., as follows:

### Jurisdictional and Venue

1.      This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C.A. §1332 as there is complete diversity of citizenship between the Plaintiff and the Defendant. At the time this Complaint was filed, Plaintiff, Kathleen Totty, formerly known as, Kathleen P. Lutz ("Kay"), resided and still resides in and is a citizen of the State of Indiana. The Defendant is a corporation incorporated under the laws of the State of Illinois, with its principal place of business located in the City of DeKalb, County of DeKalb, in the State of Illinois.  Defendant does business exclusively in DeKalb, Illinois.  The amount in controversy exceeds the jurisdictional limit of $75,000.00

2.      Venue is proper in this Judicial District pursuant to 28 U.S.C.A. §1391(a) because the Defendant is a corporation existing under the laws of the State of Illinois, with its headquarters located in this Judicial District.   Further, all of Plaintiff's claims arose in this Judicial District.

1

**The Parties**

3.      At the time Plaintiff filed this Complaint, Plaintiff, Kathleen Totty, formerly known as, Kathleen P. Lutz, was and still is a citizen of the State of Indiana who resides in LaPorte, Indiana.

4.      Defendant, Anderson Funeral Home, Ltd. is a corporation, incorporated under the laws of the State of Illinois, with its principal place of business located at 2011 S. 4th Street, DeKalb, Illinois.

**Factual Allegations Common to All Counts**

5.      Plaintiff, Kay, was married to her now deceased husband, Randall L. Lutz ("Randy"), for over twenty years and during that time they lived together in their house at 15929 Anderland Rd. in Malta, Illinois.

6.      Randy died on October 6, 2013, after being diagnosed with and battling cancer.

7.      On or about October 12, 2013, Kay met with Richard N. Anderson ("Dick Anderson"), Defendant's president, at Defendant's place of business in DeKalb, Illinois.  The purpose of Kay's visit was to make final arrangements for Randy.

8.      On or about October 12, 2013, Defendant agreed to provide direct cremation of Randy's body with full service for $3,950.  At this same meeting, Kay arranged with Dick Anderson to have Randy's remains cremated at the Anderson Funeral Home Crematory.

9.      The Anderson Funeral Home Crematory was and is, at all relevant times, owned by Defendant and was and is at the same location as Defendant's funeral home in DeKalb, Illinois.

10.      On or about October 12, 2013, at the same meeting with Dick Anderson, Kay signed a Cremation Authorization that authorized the Defendant to cremate Randy's remains.  Dick Anderson countersigned the Cremation Authorization on behalf of Defendant.

11.     Kay presumed that Defendant would arrange to receive Randy's body from the DeKalb County Coroner's Office.

12.     In addition to the cremation services that Defendant promised to provide, Defendant agreed to provide a pacific pine, cremation casket for viewing, and other merchandise all for $1,275.00.   Defendant also agreed to advance $325 for copies of Randy's death certificate, the services of Rev. Jon Hutchison, and a Coroner's permit.   With taxes, the total charged by Defendant equaled $5,652.00, which Kay paid in full by check dated October 27, 2013.

13.     Kay paid all amounts charged by Defendant for the services, equipment, and items that Defendant promised it would provide.

14.      On or about October 12, 2013, Kay selected an ashen pewter urn to hold Randy's ashes. Kay paid $342.00, plus tax for the urn.   Kay paid an additional $42 to have the urn engraved with the following:

> Randal Lee Lutz
> August 2, 1951
> October 6, 2013

15.     Kay and Dick Anderson understood that Randy's remains would be placed in the urn that Kay purchased from Defendant.

16.     At no time did Dick Anderson ever inform Kay that she would receive anything other than all of Randy's cremated remains.

15.     Sometime after October 12, 2013, but before October 19, 2013, Kay called Defendant and asked if she could pick up the urn with Randy's ashes.   During that phone call, a representative of Defendant stated, "Someone already picked them up."

16.     Kay was in shock and asked the representative who had picked up her husband's ashes.

3

17.     In response to Kay's question, the representative then told Kay that Randy's ashes had not been picked up, and that Randy's ashes would be delivered to Kay in the urn she had purchased.

18.     On or about October 19, 2013, Barry Melton, one of Defendant's employees, delivered an engraved urn to Kay in Malta, Illinois.

19.     The urn that Kay received was engraved as follows:

> Randal Lee Lutz
> August 2, 1951
> October 6, 2013

20.     Kay reasonably believed that Randy's ashes were in the urn.

21.     Kay kept the urn on her dresser for over a year.  Subsequently, Kay moved the urn to another location in their home. It comforted Kay to believe that Randy's ashes were with her in the home they shared for over twenty years.

22.     Kay did not open the urn to see if Randy's remains were inside the urn, as promised by Defendant, because she was traumatized by Randy's sudden death, and the nature of his death. She trusted the Defendant to place Randy's remains in the urn as it promised it would, and for which it was paid.  In addition, Randy was a big man.  He was 6'2" tall and weighed 230 pounds.   Kay simply could not bear to see her strong, proud husband reduced to ashes.

23.     Kay kept Randy's urn in their home for four years.  Kay was so certain that Randy's ashes were in the urn that she spoke to Randy every day, which gave her comfort for her loss.

24.     Years after Randy's death, Kay met and married Grant Totty, which is why she is now known as Kathleen Totty.

25.     In or about 2017, Kay decided to sell the house in which she and Randy lived for over twenty years in Malta, Illinois.

26.     Although Randy had requested that Kay spread his ashes on their property in Malta, Illinois, which he loved so much, Kay dreaded fulfilling his wish because believing that his ashes were present gave her comfort.   However, now that their home was for sale and would soon close, Kay knew she had to honor Randy's wishes before she moved.

27.     On or about August 21, 2017, Kay and her current husband went to Kay and Randy's home in Malta, Illinois to spread Randy's ashes on the property.   Kay struggled to open the tightly closed urn.   When she finally was able to open the urn, she saw that there were no ashes in the urn.   Kay was so horrified that she opened and closed the urn in the hopes her eyes were deceiving her.   Unfortunately for Kay, there were no ashes in the urn.

28.     When the shock subsided a little, Kay first called Randy's family to see if they knew where his ashes might be.

29.     Subsequently, Kay called Defendant and spoke to Dick Anderson.   Dick Anderson merely told Kay that they never deliver an urn without ashes in it.   Despite his apparent certainty, both he and Barry Milton told Kay that they searched for Randy's ashes at Defendant's location, but could not find them.

30.     During a telephone conversation that Kay had with Dick Anderson the week of August 27, 2017, Dick Anderson denied that the Defendant lost Randy's ashes and insisted that he himself delivered the ashes to Kay.

31.     When Kay realized that Randy's ashes never had been with her, it felt like a cruel joke had been played on her.   It felt like she had lost Randy all over again.   To this day, the fact that Kay does not know where Randy's ashes are haunts her.   After the pain of Randy's cancer, and the trauma of his sudden death, Kay still does not have closure because Defendant did not deliver

Randy's ashes to Kay. Kay's pain is magnified by the fact that she cannot honor Randy's wish for his ashes to be spread on the land they shared for over twenty years.

32.     Kay feels as though she failed Randy because she could not spread his ashes over their land. Randy had trusted Kay, and Kay had trusted the Defendant. The Defendant failed to earn Kay's trust.

## COUNT I
### (Negligence)

33.     Plaintiff re-alleges Paragraphs 1 through 32 above as and for her Paragraph 33 of this Count I as though fully stated herein.

34.     Defendant owed Kay a duty of care with regard to its handling of Randy's cremation and the delivery of his ashes to Kay. This duty arose from the following:

(a)   The Illinois Crematory Regulation Act ("Crematory Act"), 410 ILCS 18/1 et seq.

(b)   Defendant's voluntary undertaking in that Defendant undertook to cremate the body of Randal Lee Lutz and, then, furnish Kay with the cremated human remains; and

(c)   The fact that there was a special relationship between Kay and Defendant, which was created when Defendant promised to cremate the body of Randal Lee Lutz.

35.     Defendant breached the duty it owed to Kay in that it was guilty of one or more of the following negligent acts and/or omissions:

(a)   Negligently failed to cremate Randal Lee Lutz and/or deliver Randy's cremated remains to Kay;

(b)   Negligently failed to maintain custody of and account for the remains of Randal Lee Lutz;

(c)   Negligently informed Kay that it had supplied Kay with the remains of Randal Lee Lutz when it had not; and/or,

(d)  Negligently failed to supervise the conduct of its employees while they performed the work of cremating Randy's body and/or delivering Randy's remains to Kay.

36.    Kay does not know if Defendant actually cremated Randy's body.

37.    Kay does not know the whereabouts of Randy's remains.

38.    Defendant knew, or in the exercise of reasonable care, should have known that Kay would suffer grievous harm if they did not provide Kay with Randy's ashes.

39.    The damages that Kay suffered as a direct result of Defendant's breaches include, among other things:

(a)    Extreme emotional distress;

(b)    An inability to effectuate closure with respect to the sudden death of her husband of more than twenty years; and

(c)    An inability to effectuate her agreement with Randy to spread his ashes over their home of more than twenty years.

40.    In the alternative, Defendant was negligent pursuant to the theory of res ipsa loquitur in that, but for Defendant's negligence, the urn purchased by Kay would have contained Randy's human cremated remains.

WHEREFORE, Plaintiff, Kathleen Totty, formerly known as Kathleen Lutz, prays that that this Honorable Court enter judgment in her favor, and against Defendant, Anderson Funeral Home, Ltd., on COUNT I of her Complaint, and:

(a)    Award her compensatory damages in an amount to be proven at trial, but currently believed to be well in excess of the jurisdictional limits;

(b)    Award punitive damages in an amount sufficient to punish and deter Defendant and other similarly situated funeral homes from engaging in such conduct in the future;

(c)     Award her the costs incurred in bringing this action; and,

(d)     Award all other relief that this Court deems appropriate and just under the circumstances.

## COUNT II
### (Violations of the Illinois Crematory Regulatory Act)

41.     Plaintiff re-alleges Paragraphs 1 through 40 above as and for her Paragraph 41 of this Count II as though fully stated herein.

42.     There exists a statute known as the Illinois Crematory Regulation Act ("Crematory Act"), 410 ILCS 18/5, which is a criminal statute that, when violated, is a class four felony. There exists an implied private right of action under this statute pursuant to numerous court determinations that implied rights of private action exist in criminal or constitutional statutory provisions even when such statutes are silent as to civil remedies.

43.     410 ILCS 18/35(m) of the Crematory Act provides, in relevant part, that:

A crematory authority shall not knowingly represent to an authorizing agent or the agent's designee that a temporary urn contains the cremated remains of a specific decedent when it does not.

44.     Defendant violated 410 ILCS 18/35(m) of the Crematory Act in that it represented to Kay that the urn it delivered to her contained the cremated human remains of Randal Lee Lutz when, in fact, it did not.

45.     410 ILCS 18/35(l) of the Crematory Act provides, in relevant part, that:

The crematory authority shall not return to the authorizing agent or the agent's designee more or less cremated remains than were removed from the cremation chamber.

46.     Defendant violated 410 ILCS 18/35(1) of the Crematory Act in that Kay was the authorizing agent and she did not receive any of the cremated remains of her husband, Randal Lee Lutz.

8

WHEREFORE, Plaintiff, Kathleen Totty, formerly known as Kathleen Lutz, prays that that this Honorable Court enter judgment in her favor, and against Defendant, Anderson Funeral Home, Ltd., on COUNT II of her Complaint, and:

(a)   Award her compensatory damages in an amount to be proven at trial, but currently believed to be well in excess of the jurisdictional limits;

(b)   Award punitive damages in an amount sufficient to punish and deter Defendant and other similarly situated funeral homes from engaging in such conduct in the future;

(c)   Award her the costs incurred in bringing this action; and,

(d)   Award all other relief that this Court deems appropriate and just under the circumstances.

## COUNT III
### (Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act)

47.   Plaintiff re-alleges Paragraphs 1 through 32 above as and for her Paragraph 47 of this Count III as though fully stated herein.

48.   There exists a statute known as the Illinois Consumer Fraud and Deceptive Business Practices Act.   815 ILCS 505/1, *et seq.* ("Consumer Fraud Act")

49.   Kay is a Consumer and Person as defined by the Consumer Fraud Act.

50.   Section 815 ILCS 505/22 of the Consumer Fraud Act prohibits unfair or deceptive or practices, and specifically provides as follows:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

51.     At all relevant times, Defendant was engaged in trade or commerce as a funeral home and crematory in Illinois.

52.     Illinois law required Defendant to maintain a continuous chain of custody as to Randy's body and remains.   Further, Illinois law precluded Defendant from misrepresenting the existence or whereabouts of Randy's body and remains.

53.     While engaged in trade or commerce, Defendant committed unfair and/or deceptive acts or practices. Defendant carried out the acts and practices without a legal basis, in direct contravention of Illinois law, and in violation of regulatory guidelines.

54.     Specifically, it was unfair and/or deceptive for Defendant to misrepresent facts surrounding the existence and/or whereabouts of Randy's remains, refuse to provide accurate information regarding the true existence and/or whereabouts of Randy's remains, and falsely inform Kay that the urn contained Randy's remains.

55.     In addition, it was unfair and/or deceptive for Defendant to:

(a)     Violate the Crematory Act.   Specifically, Defendant violated that portion of the Crematory Act that states:

A crematory authority [Defendant] shall not knowingly represent to an authorizing agent [Kay] or the agent's designee that a temporary urn contains the cremated remains of a specific decedent when it does not.

(b)     Fail to cremate Randy's body and/or deliver Randy's cremated remains to Kay;

(c)     Fail to maintain custody of and account for Randy's remains;

(d)     Falsely inform Kay that it had supplied her with Randy's remains when it had not; and/or,

(e)     Failed to supervise the conduct of its employees while it performed the work of cremating Randy's body and/or delivering Randy's remains to Kay.

10

56.    Defendant's practices offend public policy, have a direct consumer nexus, affect consumers as a whole, and violate the basic possessory rights of consumers. These practices directly implicate consumer protection concerns because the conduct impacts and threatens consumers' right to have their loved one's remains handled in a professional and dignified manner as required by Illinois law, and causes substantial emotional distress and financial harm to consumers by subverting the legal protections afforded to customers of funeral homes and crematories.

57.    Defendant's practices are immoral, unethical, oppressive, and unscrupulous and demonstrate an unlawful practice of maximizing profits by deceiving consumers, ignoring consumers' legal rights, and profiting from the violation of laws and regulations.

58.    Defendant's conduct further implicates consumer protection concerns generally because consumers reasonably expect that their loved one's remains will be accounted for, treated with dignity and respect, and not be lost by a funeral home.  Further, consumers reasonably expect companies to communicate with them truthfully and accurately regarding the existence and whereabouts of their loved one's remains.   In addition, consumers reasonably expect companies to make honest efforts to resolve a dispute, instead of misrepresenting facts and ignoring inquiries and disputes.   Consumers also reasonably expect companies to honor and respect laws designed to protect consumers, as well as professional regulatory guidelines.

59.    Defendant misrepresented to Kay that Randy's remains were inside the urn.

60.    Kay reasonably relied upon Defendant's misrepresentations and was deceived into believing Randy's ashes were in the urn for over four years.

61.    Defendant's actions proximately caused Kay to suffer the following damages:

        (a)    Extreme emotional distress;

11

(b)    An inability to effectuate closure with respect to the sudden death of her husband of more than twenty years;

(c)    An inability to effectuate her agreement with Randy to spread his ashes over their home of more than twenty years; and,

(d)    Paying for services she did not receive.

62.    An award of punitive damages is appropriate because Defendant's conduct is outrageous, willful, wanton, showed a reckless disregard for Kay's rights, and was designed to take advantage of a vulnerable consumer, caused emotional harm to Kay, and causes substantial harm to the public as a whole.

WHEREFORE, Plaintiff, Kathleen Totty, formerly known as Kathleen Lutz, prays that that this Honorable Court enter judgment in her favor, and against Defendant, Anderson Funeral Home, Ltd., on COUNT III of her Complaint, and:

(a)    Award her compensatory damages in an amount to be proven at trial, but currently believed to be well in excess of the jurisdictional limits;

(b)    Award punitive damages in an amount sufficient to punish and deter Defendant and other similarly situated funeral homes from engaging in such conduct in the future;

(c)    Award her reasonable attorney's fees and the costs incurred in bringing this action; and,

(d)    Award all other relief that this Court deems appropriate and just under the circumstances.

63.    PLAINTIFF DEMANDS TRIAL BY JURY.

Respectfully submitted,

KATHLEEN TOTTY, formerly known as, KATHLEEN LUTZ, Plaintiff.


By: ___/s/ Thomas G. Oddo_____
        One of Her Attorneys

Adrian Mendoza
ARDC No. 6225634
Email: amendoza@lilliglaw.com
Thomas G. Oddo
ARDC No. 6205239
Email: toddo@lilliglaw.com
LILLIG & THORSNESS, LTD.
1900 Spring Road, Suite 200
Oak Brook, Illinois 60523
T. (630) 571-1900
F. (630) 571-1042